IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v.

LEANDER LAUDELL BRINSEN,

Defendant.

Criminal Action Number 3:07CR156

**MEMORANDUM OPINION**

This matter is before the Court on the defendant's motion to suppress. For the reasons stated herein, the motion to suppress will be denied.

**I. FACTS**

On February 9, 2007, the defendant, Leander Laudell Brinsen ("Brinsen" or "defendant") was a passenger in a car driven by Charles Morris ("Morris" or "the driver"). According to Brinsen, he and Morris have known each other for approximately eight years, and Morris has a child with Brinsen's sister. Morris's current girlfriend owns the car Morris was driving, a 1998 Lexus. At approximately 9:00 p.m., the car was stopped by Richmond police officers, Officer Ratliff and Officer Wade, who first heard and then saw the car as they were driving in the opposite direction on Hull Street Road.[1] The officers were patrolling as part of the Focus Mission Team ("FMT"), which was formed to address violent crime and drug trafficking in what was considered by law enforcement to be a high crime area of the Second Precinct within the City of Richmond. After hearing and seeing the car, the officers made a U-turn and initiated a traffic stop. The car did not

---

[1]The officers also testified that they could "feel" the vibrations from the loud music coming from the car.

stop immediately but took several seconds to pull into the McDonald's parking lot, located within the parking area of Southside Plaza, and into a parking space. The officers stopped the car for "excessively loud music," which is governed by a local City of Richmond ordinance, Ordinance No. 18-1(a)(11) and 18-2.[2]

Officer Ratliff approached the driver's side of the car, and Officer Wade approached the passenger's side. By this time, the loud music had been turned down or off. Officer Ratliff immediately smelled air freshener as he approached the driver's side window, which was down. He saw that the defendant had a bottle of air freshener on his lap. Officer Ratliff began speaking with the driver, Morris, and told him that he had pulled him over for loud music. Morris then asked the officer why he pulled him over. Officer Ratliff again told Morris he had pulled him over for loud music. Morris responded that he did not have a stereo in the car[3] and kept looking at the cell phone in his hand. Officer Ratliff asked Morris for his license and registration. Morris responded by asking again why he had pulled him over, and Officer Ratliff responded that he had already told him twice that it was for loud music. Morris then handed Ratliff his license and registration. Officer Ratliff testified that Morris was very nervous during this exchange.

---

[2]Section 18-1(a)(11) states in relevant part: (a) The following acts, among others, are declared to be loud and disturbing noises in violation of this chapter . . . namely: (11) Amplified sound from vehicles. The playing or operation, or permitting the playing, use or operation, of any radio, tape player, loud speaker or other electronic device used for the amplification of sound, which is located within a motor vehicle, and which is audible from outside the motor vehicle at a distance of fifty(50) feet or more. Section 18-2 states in relevant part: (a) It shall be unlawful to create or assist in creating any unreasonably loud and disturbing noise in the City, and noise of such character, intensity and duration . . . is hereby prohibited. (b) Any person who violates any provision of this section shall be deemed to be guilty of a Class 2 misdemeanor.

[3]The officers later tested the stereo system in the car and determined that it was, in fact, working.

At the same time, Officer Wade approached the passenger's side of the car. He also stated that he could smell the air freshener when he came up to the car and that he saw the air freshener can in Brinsen's lap. Officer Wade saw that Brinsen was not wearing a seat belt, and he began to speak with Brinsen. He asked Brinsen for his identification. Brinsen was reluctant to give the information and claimed not to know his social security number. Officer Wade could smell burnt marijuana in the car and suspected that was why Brinsen had air freshener. Wade also asked Brinsen why he was not wearing a seatbelt. Brinsen claimed that he had been wearing a seatbelt, but Officer Ratliff, who was listening to this exchange, told Brinsen that he had been watching him also and that he never saw the seatbelt on him. According to both officers, Brinsen was nervous and fidgety and would not look at the officer. Because Brinsen was reluctant to provide identification, Officer Wade suspected that Brinsen had outstanding warrants. The officers felt that they needed other units for their safety, so Officer Wade called for other units to provide assistance before the officers attempted a protective sweep of the car.

Once other units arrived, the officers asked both defendants to step out of the car and move to the back of the car. Morris did not comply immediately. Instead, Morris made a call on his cell phone and told the person with whom he was speaking that the police were going to search the car. Officer Ratliff told Morris that he was not going to search the car but would do a sweep for weapons only. Officer Ratliff asked Morris to get out of the car again, but Morris continued to talk on the cell phone and would not hang up. Officer Ratliff told Morris again that he had to get out of the car, and Morris did so but asked Ratliff again why he was searching the car. Ratliff answered again that he was not searching the car but just doing a protective sweep.

After both Morris and Brinsen were out of the car, the officers performed the protective

sweep. Ratliff looked in the closed center console and found a gun along with Brinsen's identification card, which was under the gun. The officers also saw remnants of marijuana, described as green leafy material and seeds. After running Brinsen's identifiers through the system, the officers learned that Brinsen had two outstanding arrest warrants. Brinsen was arrested pursuant to those warrants. Brinsen was given Miranda warnings, which he acknowledged that he understood. He then made statements to the officers, stating that he smoked crack cocaine and marijuana, that he had smoked marijuana for several years, a few times a week, and that he had smoked crack cocaine for about two months.

## II. ANALYSIS

### A. Standing

The government initially argued that the defendant lacks standing to challenge the traffic stop or the protective sweep of the car because he was a passenger. There is much case law that states that a passenger in a vehicle has no reasonable expectation of privacy in items found in the vehicle of another. United States v. Rusher, 966 F.2d 868, 874-75 (4th Cir. 1992); United States v. Carter, 300 F.3d 415, 421-22 (4th Cir. 2002). However, a recent United States Supreme Court case, Brendlin v. California, 127 S.Ct. 2400 (2007), held that when a police officer makes a traffic stop, both the driver and the passenger are seized within the meaning of the Fourth Amendment and so may challenge the constitutionality of the stop. Accordingly, the Court will assume *arguendo* that the defendant, who was a passenger in this case, has standing to challenge the stop and subsequent protective sweep.

### B. The Fourth Amendment Reasonableness Inquiry

The Fourth Amendment protects persons from unreasonable searches and seizures. See U.S.

Const. amend. IV. "The touchstone of the Fourth Amendment is reasonableness . . .." United States v. Knights, 534 U.S. 112, 118 (2001). Warrantless searches are "*per se* unreasonable under the Fourth Amendment -- subject only to a few specifically established and well-delineated exceptions." See California v. Acevedo, 500 U.S. 565, 580 (1991). In the context of an ordinary traffic stop, which is considered a limited seizure within the meaning of the Fourth and Fourteenth Amendments, Delaware v. Prouse, 440 U.S. 648, 653 (1979), one such exception is the existence of probable cause or reasonable suspicion, based on specific and articulable facts, of unlawful conduct. Terry v. Ohio, 392 U.S. 1(1968). A traffic offense is a specific and articulable fact justifying a traffic stop. United States v. Hassan El, 5 F.3d 726, 729 (4th Cir. 1993).

In conducting a traffic stop, the police must "have probable cause to believe that a traffic violation has occurred," Whren v. United States, 517 U.S. 806, 810 (1996), or "a reasonable suspicion supported by articulable facts that criminal activity may be afoot." United States v. Sokolow, 490 U.S. 1, 7 (1989) (internal quotation marks omitted). The officers' subjective intentions and motivations are irrelevant to the Fourth Amendment analysis. See Whren, 517 U.S. at 813; Hassan El, 5 F.3d at 730. As long as there was an objective basis for the stop, based on probable cause or reasonable suspicion, the dictates of the Fourth Amendment have been satisfied. Further, "[O]nce a motor vehicle has been lawfully detained for a traffic violation, the police may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures." Pennsylvania v. Mimms, 434 U.S. 106, 111 n.6 (1977), quoted in Ohio v. Robinette, 519 U.S. 33, 38-39 (1996). Pending completion of the traffic stop, police may order all passengers out of a car without suspicion. Maryland v. Wilson, 519 U.S. 408, 410 (1997).

Protection of police and others can justify protective searches when police have a reasonable

belief that the suspect poses a danger. Michigan v. Long, 463 U.S. 1032, 1049 (1983). In Long, the Supreme Court noted that roadside encounters between the police and suspects are "especially hazardous, and that danger may arise from the possible presence of weapons in the area surrounding a suspect." Id. "These principles compel our conclusion that the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." Id. (citing Terry v. Ohio, 392 U.S. 1, 21 (1968)). "[T]he issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." Terry, 392 U.S. at 27.

The excessively loud music coming from the car, which is prohibited by Ordinance No. 18-1(a)(11) and 18-2, is an offense that justifies the traffic stop. "[W]hen an officer observes a traffic offense or other unlawful conduct, he or she is justified in stopping the vehicle under the Fourth Amendment." Hassan El, 5 F.3d at 730. Further, once the car was lawfully detained, the police may order the driver and passengers out of the car without violating the Fourth Amendment. See Pennsylvania v. Mimms, 434 U.S. at 111; Maryland v. Wilson, 519 U.S. at 410.

At the time the officers decided to ask Morris and Brinsen to leave the car and to do a protective sweep of the car, the officers' suspicions were raised by the following facts: (1) there was excessively loud music coming from the vehicle, which was a violation of City of Richmond Ordinance No. 18-1(a)(11) and 18-2; (2) the vehicle was being driven in a high crime area at night; (3) the passenger, Brinsen, was not wearing a seat belt, which is an offense for which he can be

6

charged and issued a summons; (4) when the officers initiated the traffic stop, the vehicle did not stop immediately but proceeded to the parking lot of a McDonald's several blocks away and into a parking space as if the driver did not see or hear the police car behind him or in an effort to convince the officers that the driver and passenger did not believe they had committed any offense; (5) the officers smelled the strong odor of air freshener and saw the can of air freshener on Brinsen's lap, often an indication that the occupants are trying to hide the smell of marijuana; (6) both the driver and passenger were reluctant to provide identification and to answer questions regarding identifiers, such as a license or other identification card or social security number; (7) the driver asked several times, although he had already been told, why they were being pulled over; (8) the driver did not comply with the officer's instructions to get out of the car, but instead telephoned someone and told that person that the police were going to search the car; (9) both the driver and the passenger were nervous, fidgety, and evasive, and Brinsen would not look at the officers; and (10) the officers could smell the odor of burnt marijuana coming from the car, after the smell of the air freshener dissipated. All of these facts "taken together with the rational inferences from those facts, reasonably warrant the officers in believing that the suspect[s] [in this case were] dangerous and [that] the suspect[s] may gain immediate control of weapons." There was no violation of the Fourth Amendment.

### III. CONCLUSION

The Court concludes that the stop and subsequent protective sweep were lawful under under the Fourth Amendment. Accordingly, defendant's motion to suppress will be denied.

An appropriate Order shall issue.

June 29, 2007  /s/
DATE  RICHARD L. WILLIAMS
 SENIOR UNITED STATES DISTRICT JUDGE